AF Approval __NA__                                 Chief Approval  _MPF_

FILED - USDC - FLMD - ORL
SEP 20 2023 PM4:14

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 6:23-cr-89-CEM-DCI

ZACHARY RAMYARD

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

Roger B. Handberg, United States Attorney for the Middle District of Florida,

and the defendant, ZACHARY RAMYARD, and the attorney for the

defendant, Ricky Lee Jancha, Esq., mutually agree as follows:

**A.    Particularized Terms**

   1.    Count Pleading To

         The defendant shall enter a plea of guilty to Count One of the

Superseding Information.  Count One charges the defendant with Postal

Robbery, in violation of 18 U.S.C. §§ 2114(a) and 2.

   2.    Maximum Penalties

         Count One carries a maximum sentence of 10 years

imprisonment, a fine of $250,000, a term of supervised release of not more

than 3 years, and a special assessment of $100 per felony count. With respect

to certain offenses, the Court shall order the defendant to make restitution to

Defendant's Initials _____

any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3.    Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count One are:

First:    the Defendant, aiding and abetting others, intentionally took from the person or the presence of the person described in the indictment any mail matter or any other money or any other property of the United States then in the lawful charge, control or custody of that person; and

Second:    the Defendant, aiding and abetting others, took the property against the victim's will, by means of force and violence or by means of intimidation.

A Defendant "aids and abets" a person if the Defendant intentionally joins with the person to commit a crime.

A Defendant is criminally responsible for the acts of another person if the Defendant aids and abets the other person.  A Defendant is also responsible if the Defendant willfully directs or authorizes the acts of an agent, employee, or other associate.

4.    Indictment Waiver

Defendant will waive the right to be charged by way of superseding indictment before a federal grand jury.

Defendant's Initials _____    2

5.    <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the offense conduct.

6.    <u>Mandatory Restitution to Victim of Offense of Conviction</u>

Pursuant to 18 U.S.C. § 3663A(a) defendant agrees to make full restitution to the victim postal carrier.

7.    <u>Guidelines Sentence</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

Defendant's Initials _____    3

8.   <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level.  The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

Defendant's Initials ___     4

9.    Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the

investigation and prosecution of other persons, and to testify, subject to a

prosecution for perjury or making a false statement, fully and truthfully before

any federal court proceeding or federal grand jury in connection with the

charges in this case and other matters, such cooperation to further include a

full and complete disclosure of all relevant information, including production

of any and all books, papers, documents, and other objects in defendant's

possession or control, and to be reasonably available for interviews which the

United States may require.  If the cooperation is completed prior to

sentencing, the government agrees to consider whether such cooperation

qualifies as "substantial assistance" in accordance with the policy of the United

States Attorney for the Middle District of Florida, warranting the filing of a

motion at the time of sentencing recommending (1) a downward departure

from the applicable guideline range pursuant to USSG §5K1.1, or (2) the

imposition of a sentence below a statutory minimum, if any, pursuant to 18

U.S.C. § 3553(e), or (3) both.  If the cooperation is completed subsequent to

sentencing, the government agrees to consider whether such cooperation

qualifies as "substantial assistance" in accordance with the policy of the United

States Attorney for the Middle District of Florida, warranting the filing of a

Defendant's Initials _____        5

motion for a reduction of sentence within one year of the imposition of

sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant

understands that the determination as to whether "substantial assistance" has

been provided or what type of motion related thereto will be filed, if any, rests

solely with the United States Attorney for the Middle District of Florida, and

the defendant agrees that defendant cannot and will not challenge that

determination, whether by appeal, collateral attack, or otherwise.

      10.   Use of Information - Section 1B1.8

      Pursuant to USSG §1B1.8(a), the United States agrees that no

self-incriminating information which the defendant may provide during the

course of defendant's cooperation and pursuant to this agreement shall be used

in determining the applicable sentencing guideline range, subject to the

restrictions and limitations set forth in USSG §1B1.8(b).

      11.   Cooperation - Responsibilities of Parties

      a.   The government will make known to the Court and other

relevant authorities the nature and extent of defendant's cooperation and any

other mitigating circumstances indicative of the defendant's rehabilitative

intent by assuming the fundamental civic duty of reporting crime. However,

the defendant understands that the government can make no representation

Defendant's Initials _____       6

that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

        b.    It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

        (1)    The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

        (2)    The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by

Defendant's Initials _____             7

imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

Defendant's Initials _____          8

(5)    The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

12.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §§ 924, 981(a)(1)(C) and 28 U.S.C. § 2461(c) whether in the possession or control of the United States, the defendant or defendant's nominees.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action.  The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging

Defendant's Initials _____    9

instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United

Defendant's Initials _____     10

States.  The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing.  In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this

Defendant's Initials _____     11

agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

**B.    Standard Terms and Conditions**

1.    Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the

Defendant's Initials _____        12

Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the Defendant agrees to deliver a cashier's check, certified check, or money order to the Clerk of the Court in the amount of $100, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing. The defendant understands that this agreement imposes no limitation as to fine.

2.  Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.  Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

Defendant's Initials _____          13

4.    <u>Sentencing Information</u>

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    <u>Financial Disclosures</u>

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United

Defendant's Initials _____ 14

States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

     6.   <u>Sentencing Recommendations</u>

       It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States

Defendant's Initials _____         15

Probation Office. Defendant further understands and acknowledges that any

discussions between defendant or defendant's attorney and the attorney or

other agents for the government regarding any recommendations by the

government are not binding on the Court and that, should any

recommendations be rejected, defendant will not be permitted to withdraw

defendant's plea pursuant to this plea agreement. The government expressly

reserves the right to support and defend any decision that the Court may make

with regard to the defendant's sentence, whether or not such decision is

consistent with the government's recommendations contained herein.

7.    Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and

authority to impose any sentence up to the statutory maximum and expressly

waives the right to appeal defendant's sentence on any ground, including the

ground that the Court erred in determining the applicable guidelines range

pursuant to the United States Sentencing Guidelines, except (a) the ground

that the sentence exceeds the defendant's applicable guidelines range as

determined by the Court pursuant to the United States Sentencing Guidelines;

(b) the ground that the sentence exceeds the statutory maximum penalty; or (c)

the ground that the sentence violates the Eighth Amendment to the

Constitution; provided, however, that if the government exercises its right to

Defendant's Initials _____        16

appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the

defendant is released from his waiver and may appeal the sentence as

authorized by 18 U.S.C. § 3742(a).

8.   <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the

Office of the United States Attorney for the Middle District of Florida and

cannot bind other federal, state, or local prosecuting authorities, although this

office will bring defendant's cooperation, if any, to the attention of other

prosecuting officers or others, if requested.

9.   <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or

<u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this

cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.   <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this

agreement and is pleading guilty freely and voluntarily without reliance upon

any discussions between the attorney for the government and the defendant

and defendant's attorney and without promise of benefit of any kind (other

than the concessions contained herein), and without threats, force,

intimidation, or coercion of any kind.  The defendant further acknowledges

Defendant's Initials _____        17

defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

Defendant's Initials _____       18

11.    <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.    <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials _*3L*_                    19

13.   Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ___18___ day of ~~August~~ September, 2023.

ROGER B. HANDBERG
United States Attorney

Zachary Ramyard
Defendant

for Kara M. Wick
Assistant United States Attorney

Ricky Lee Jancha
Attorney for Defendant

for Michael P. Felicetta
Assistant United States Attorney
Chief, Orlando Division

Defendant's Initials ___        20

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                        CASE NO. 6:23-cr-89-CEM-DCI

ZACHARY RAMYARD

PERSONALIZATION OF ELEMENTS

First:    On or about March 7, 2022, in the Middle District of
          Florida, did you aid and abet others to intentionally take
          from a U.S. Postal Service mail carrier, any mail matter
          or any other money or any other property of the United
          States then in the lawful charge, control or custody of
          that person?

Second:   Was the property taken against the victim's will, by
          means of force and violence or by means of
          intimidation?

Defendant's Initials _ZR_                 21

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 6:23-cr-89-CEM-DCI

ZACHARY RAMYARD

### FACTUAL BASIS

**A.    Details of the March 7, 2022 Robbery**

On March 7, 2022, the United States Postal Inspection Service ("USPIS") was notified at approximately 1:20 p.m. that Q.C., a United States Postal Service ("USPS") mail carrier (the "Victim") had just been robbed at an apartment complex located on Walden Circle, Orlando, FL ("Apt. Complex 1"). The Victim was on duty in his USPS issued uniform delivering mail to the residents of the apartments. The Victim suffered a concussion and a scalp hematoma and had to be intubated as a result of the injuries he sustained during the robbery. This robbery is hereinafter referred to as the "Mail Carrier Robbery."

During an interview on March 8, 2022, the Victim stated that the Victim was sitting in the Victim's USPS mail truck when the first robber

Defendant's Initials _____      22

stepped into the mail truck, demanded the Victim's arrow key,[1] and attempted

to pull the key off of the Victim's belt.  The first robber pulled so forcefully that

he pulled the Victim out of the mail truck.  After being pulled out of the mail

truck, the Victim then felt something hard strike the back of the Victim's head,

causing the Victim to fall to the ground.  The Victim saw the second robber

put what he believed to be a firearm in his (the robber's) rear waistband.[2]  The

Victim stated that the two robbers (together, the "Robbers") then ran in

different directions.

On March 25, 2022, mail was stolen from four communities in

Orlando, Florida (collectively, the "Target Communities"), each of which is

located less than about two miles from Apt. Complex 1 where the robbery of

the Victim occurred.  The arrow key stolen during the Mail Carrier Robbery

was capable of opening the mailboxes in the Target Communities.

As evidenced by the below information, **RAMYARD** aided and abetted

others in the robbery of the Victim during the above-described Mail Carrier

Robbery.

---

[1] Arrow keys are USPS proprietary keys that are serialized. They grant access to various types of mail collection receptacles usually for a specific zip code(s) that make up a geographic area.  No person outside of the USPS is authorized to be in possession of an arrow key.

[2] The Victim believed the weapon he saw to be a real firearm.  Rojas has stated that the weapon used was a BB-gun, not a real firearm.

Defendant's Initials _____            23

**B.    Identification of Rojas and "Benzo"**

On the day of the Mail Carrier Robbery, law enforcement obtained video surveillance footage (the "Surveillance Video") from a resident of Apt. Complex 1. Sources identified one of the robbers as Jesus Rafael Rojas ("Rojas"). According to sources, Rojas worked with an individual known as "Benzo," a now-deceased individual with initials J.B. Investigation has shown that Rojas and Benzo worked together to plan and carry out the Mail Carrier Robbery. Rojas has pleaded guilty to federal charges and been sentenced for his involvement in the robbery.

**C.    Communications Relating to the Mail Carrier Robbery**

Following J.B.'s (a/k/a Benzo) death in April 2022, the Osceola County Sheriff's Office obtained a search warrant for cell phones found inside the vehicle J.B. was occupying. One of those phones was identified as an iPhone with phone number XXX-XXX-9468 ("J.B.'s Phone" or the "9468 Phone"). This is the phone number associated with J.B.'s Instagram account "benzosteadyswipin" account per the search warrant return records provided by Instagram. A review of J.B.'s Phone showed information related to the Mail Carrier Robbery.

Defendant's Initials _____    24

i.    *RAMYARD Used Phone Number 1588 to Communicate with J.B.*

A conversation took place between the user of J.B.'s Phone and RAMYARD via text chat between February 10, 2022 and April 28, 2022. The conversation was a text chat between J.B. and phone number XXX-XXX-1588 (the "1588 Phone"). During this conversation, the user of the 1588 Phone (RAMYARD) and J.B. exchanged multiple texts regarding bank accounts and debit cards in the name of other individuals.

On March 3, 2022 (four days before the Mail Carrier Robbery), the user of the 1588 Phone (RAMYARD) texted J.B., "Bro Rob a mailman And we don't gotta worry bout shit no lie," and "But it's a federal charge can't do it w no rental or real car." J.B. responded, "Chico would do it I swear," and "He'll do anything so I can fw him." RAMYARD responded, "Does he have a stool Stolo[3] Or someone who can take him." J.B. responded, "Nah the nigga I gave money to cause he was finna get kicked out do They would do it tomorrow." RAMYARD responded, "They got a ride Not the rental bro It's real federal." Below is the remainder of that particular text chat:

J.B. – They have they own car

RAMYARD – They investigate it fr

J.B. – Wtf u talking about

---

[3] "Stolo" is slang for stolen car.

Defendant's Initials _____    25

RAMYARD – They need to take they plates off; Robbing the mail man

J.B. – They gave they all car; They will

RAMYARD – Ok; But they need his key; The mail key

J.B. – Why u need they key tho

RAMYARD – They have to really watch him; I got 5k no lie bro; I swear to god; I'll give you it even before u get the key; I been looking all week for someone; Steal his mail bag and his key

J.B. – Don't be cappin[4]

RAMYARD – On god; But don't be on no weird shit tryna cuff

J.B. – Why you need they keys

RAMYARD – I'm paying u 5k; Bro I need the keys; We can get us any

mail

J.B. – U know I'll handle up

RAMYARD – We want; We can send open up cards; to addys; And get card; No problem

J.B. – Ohhhhh; Ight

RAMYARD – I got a wave

J.B. – I'll da do it tomorrow; What county thi

RAMYARD – Winter park; They gotta slide quick tho bro

---

[4] "Cappin" is slang for lying.

Defendant's Initials _𝓩𝓜___          26

At approximately 1:22 pm on March 7, 2022 (within minutes of the Mail Carrier Robbery), the user of the 1588 Phone (RAMYARD) texted J.B., "Yo," "My daughter sleeping," "What's good." J.B. responded, "Got keys." Below is the continuation of that particular text chat:

> RAMYARD – Get the zip code; Area; Have him drop current; Throw away the phone; The nigga phone
>
> J.B. – Police there
>
> RAMYARD – Ik
>
> J.B. – Bro; He hid the keys
>
> RAMYARD – But drop current location
>
> J.B. – Dumb asf
>
> RAMYARD – Wtf where; Why did he do that; Why!!!!; That's what there gonna be looking for; Is he dumb; Way; Let's go grab them shits
>
> J.B. – XXXX Walden cir, Orlando, Fl
>
> RAMYARD – Link; Let's go; I'm bring the 5k on me
>
> J.B. – 5k; 5k**
>
> RAMYARD – Get the mail key
>
> J.B. – 6k**; Vibe; Lowkey; U know I'm worth it
>
> RAMYARD – Let's go rn; Rnrn; Way
>
> J.B. – Landstar; Or dt 7/11?
>
> RAMYARD – Meet at millennia mall

Defendant's Initials _____   27

J.B. – How far

RAMYARD – I'm otw; Rn; How far are you

J.B. – 3 mins

RAMYARD – Ok; I'm pulling up; Bro; Ok; Bro; 5200 cause he ain't get no mail bag; I was only paying extra bc I thought he had that too

J.B. – He ain't have one chill; U don't care about the mail chico got ducked up; Mad cuts and he bleedin; U can go get his phone and id they threw it

RAMYARD – Bro 5200; Ill pay you 6k if you check a mailbox in another neghiborhood in that area; Like one mailbox; Not all; Just check one mailbox record it; Like open it close it you don't even gotta take mail

J.B. – Bet

RAMYARD – Ok rn; I'm otw too

J.B. – Way

RAMYARD – 7 min

J.B. – Otw 5 mins

RAMYARD – Ok; Check mailbox first

J.B. – Neighborhood next to it; Shit got; Hot

RAMYARD – Not the one next to it; Around that area; Just check one mailbox; They don't know if it's the mail man key or what lol; They can't just arrest u for checking ur mailj

J.B. – Mad copsssss

RAMYARD – Fr; They probably going to all the routes rn; Watch for unders covers; ?; Don't call me regular phone call; Saying that; Way

Defendant's Initials _____      28

J.B. – [*Sends RAMYARD video of opening a box with an arrow key*]

J.B. – I'm keeping this; Gugu; Gmfu

RAMYARD – Lol wtf

J.B. – guru; I'm finna come up Ms

RAMYARD – Nigga wya lol; There's mad cops

J.B. – Mall

RAMYARD – Your so fucking dumb why did I do that; U; On camera

J.B. – Nah

RAMYARD – It's a mailbox that has cameras?

J.B. – Nun kid

RAMYARD – Ok; Good

J.B. – I'm not dumb

RAMYARD – Tonight ima have a mission for u

J.B. – Better; U cap

RAMYARD – There's finna be cops watching all those routes bro; We gotta be careful; No lie

J.B. – U Don't fwm for real; U my brother; U see I do everything u say

RAMYARD – We going up kid; Yo; Meet me in the mail

J.B. – At mall

RAMYARD – Ok I'm rite here; You at Neiman

J.B. – Same

Defendant's Initials _____        29

RAMYARD – Delete that video rn from ur phone; We need new numbers

J.B. and RAMYARD exchanged numerous text messages containing personal identifying information, including information for bank accounts that received altered check deposits.[5]

### ii.    RAMYARD Communicated with J.B. on Telegram

J.B., using Phone 9468, also messaged RAMYARD via Telegram[6] between the dates of February 22, 2022 and April 26, 2022.[7] Specifically, on March 3, 2022 (four days before the Mail Carrier Robbery), RAMYARD sent J.B. a picture of three USPS arrow keys. RAMYARD then stated, "Don't make it look like you robbing them for the key. Rob them for everything. Money wallet everything. But the key is the first thing to take. And mail bag. It has to

---

[5] For instance, J.B. sent RAMYARD personal identifying information for the following individuals: E.G. on February 16, 2022; I.E. on February 12, 2022; and S.G. on February 22, 2022. Bank records showed that accounts belonging to each of these three individuals received deposits of altered checks in late February 2022.

[6] Telegram is an encrypted communication platform which allows direct messaging.

[7] On March 3, 2022, the user of the 1588 Phone (RAMYARD), asked J.B., "You have telegram?" J.B. then gave RAMYARD his Telegram username "@benzodaswiper." At about 3:47 am, RAMYARD texted J.B., "Check tele." J.B. responded on the below Telegram chat, "Nah winter park for sure." Based on this information, the user of the 1588 Phone and Telegram account user in the below referenced chats with J.B. is believed to be the same person and is referenced as RAMYARD.

Defendant's Initials _____    30

be winter park area. Or a rich area." J.B. responded back, "Nah winter park for sure."

On March 7, 2022 at approximately 2:13 p.m. (within about an hour of the Mail Carrier Robbery), J.B. messaged RAMYARD and stated, "Yo" and "I'm keeping this." J.B. then sent a video to RAMYARD showing the opening of an apartment mailbox using an arrow key, a still picture of which is below:



### iii.    *J.B. Communicated with Rojas*

Another conversation took place via text message between J.B. and a phone number ending in 7880 (the "7880 Phone") between the dates of February 10, 2022 and April 21, 2022. During these chats, the 7880 Phone was being used by Rojas (one of the robbers) and/or Camilo Vivas Sanchez

("Sanchez") (another one of the robbers).[8]    As shown below, these chats referenced "Z" or "Zee" (an alias for RAMYARD).

On March 5, 2022 (two days before the Mail Carrier Robbery), Rojas (referenced below as Robber 2) texted J.B. "yooo", "where mail man???" J.B. responded, "Windermere", "Winter park." Below is a continuation of that chat:

Robber 2 – bro if we don't get any today I got postal jere in Kirkman ima look if not its done by tomorrow early

J.B. – No mail Tomorrow

Robber 2 – okay Monday; Ima do it my onw bro tell z to put more in the table im taking the risk

J.B. – I'll put more handle up tho nun comes back to Benzo or z tho

Robber 2 – what that means

J.B. – Get keys

At approximately 1:02 p.m. on March 7, 2022 (the date of the robbery), J.B. texted the 7880 Phone, "Yooo" and "What area." At 1:27 p.m., Rojas texted an image depicted the location of the Mail Carrier Robbery. A continuation of that particular chat is below:

J.B. – Where wallet; And phone; Way; Don't ever talk to me like that

---

[8] Based on investigation, including facts known about Rojas and Sanchez and the context of the communications, the number ending in 7880 was sometimes used by Rojas. However, subscriber information and location data for the phone indicates that the 7880 Phone actually belongs to Sanchez.

Robber 2 – bro im just mad asf bro that nigga hit me and camilo DUMB ASF HE RUN THE OTHER WAY; I WAS IN THE CAR WITHOUT Keys and all like shit mad hot

J.B. – U good tho vibe; U toook bag or no

Robber 2 – like you gotta understand that shit just happened and u come to me screaming and shot; he dindt have no bag he had a cest

J.B. – What's a cest

Robber 2 – [*Robber 2 sent a screenshot of a Google translation for cesta which shows basket*]

Robber 2 – nigga I had to run like a mile and I was dying, just fell from my bike yesterday

J.B. – No id or phone or u throw it somewhere

Robber 2 – i throw everything bro don't ask shit on the phone bra shit mad ho; what time u coming bro?; pick that im bring it, im out of town for couple days

J.B. – Where u going

Robber 2 – Miami; shit hot bro fr; ima shower and im out, where I pick up my money; v; yoo

J.B. – Yo; Zee Mad at me

Robber 2 - ???; I need my bag bro I got what u asked me for idc bro need

that

J.B. – We need mail bag and phone and id

Robber 2 – im out bro fr shit hot asf we got ppl that live in that complex

J.B. – He gonna give me less; Imma pay u

Defendant's Initials ___    33

Robber 2 – bro I need what we talked about that's why I done this shit, you cannot change plans the day its done bro, this streets shit after today we lock inn bro this wasn't scaming bro took the risk; no game bro

J.B. – Ik but he giving me less but imma pay. U good; I'll take the lose

Robber 2 – wya?

Robber 2 – another shit too bro now this nigga saying he going to my fam crib

J.B. – Meeting zee

Robber 2 – nigga; this gotta be word by word bro if not im not working anymore my nigga

J.B. – Yo wtf u on; I got ur money; I needed bag with mail; Id and phone; Gotta make it seem like u was robbing him

Robber 2 – I did it bro ion got the phone I throw all that; I took the little chain too; bro u txting to much shit fr

J.B. – Way; Finna pull up on u in a few

Robber 2 – bet; same place; uo; wya?; my baby momy giving birth

J.B. – Yo; Imma make u money

These conversations, in which Rojas and J.B. reference "Z" or "Zee" (RAMYARD) indicate that RAMYARD was paying the Robbers, through J.B., to commit the Mail Carrier Robbery.

Later on March 7, 2022 at approximately 10:42 p.m., Rojas texted J.B., "omw to Miami", "yo bro", "my bad for talk to you that way today bro but I

Defendant's Initials _____    34

was just in pression and u was screaming at me like 5 min after", "u know I love

u, and this not only for money its for show you and z loyalty nigga."

**D.    Evidence Showing RAMYARD Used the 1588 Phone Number**

On January 4, 2023, an interview was conducted with B.R., who was

identified through phone records as someone who had contacted the 1588

Phone Number several times beginning in January 2022.  During the interview,

B.R. searched his/her phone for any contacts with the 1588 Phone Number but

stated that he/she could not find any such contacts.  However, while B.R.

searched for the 1588 Phone Number on his/her phone, the name "zjewett"

appeared.  B.R. stated that he/she met that person (who he/she referred to as

"Z") through a friend. B.R. described "Z" as 20-21 years of age, possible Indian

heritage, and approximately 5'7" to 5'8" tall. B.R. stated "Z" was missing one

of his front teeth.

Additional information was also gathered from the text chat between J.B.

and the user of the 1588 Phone, which indicates that RAMYARD was the user

of the phone.  For instance, on March 13, 2022, the user of the 1588 Phone

texted a photograph to J.B., "loved" the image and then responded "Damn shit

hit me cali was littt."    The photograph showed a picture of J.B. and

RAMYARD.

Defendant's Initials _____        35

On April 9, 2022, J.B. texted with the user of the 1588 Phone (RAMYARD) and the user of the 1588 phone told J.B. to "Come; XXXXX calderdale ave." According to law enforcement databases, on January 25, 2023, mail from Orange County Florida Utilities for RAMYARD was received at XXXXX Calderdale Avenue address (Windermere, FL). On January 27, 2023, mail for RAMYARD from Duke Energy was received at that residence.

On April 4, 2022, the user of the 1588 Phone texted J.B., "And we go to my Windermere crib and chil for the meantime." J.B. responded, "That would be perfect." The following is a continuation of that chat:

RAMYARD – The air bnb one; The good one

J.B. – Yeaaaaa; Bro I can book it; I should have been ask u; Only be and yg in there; I'm soooooo dumb; Been at embassy paying 450 a day; For 8 days

RAMYARD – Ok we gotta come before 4:30 they said; Can u come rnrnrn; ??; ??; How far

J.B. – Okay; I'm 3 minutes from my car

On April 5, 2022, the day following the above chat, the Orange County Sheriff's Office was called out to XXXX Coventry Park Way, Windermere, Florida, in relation to a domestic incident. When speaking with police, a female witness identified two individuals, "Benzo" whose real name she knew as

Defendant's Initials _ZR_        36

"Jayden" and "White G," who she identified was Benzo's brother. "White G" is believed to be "yg" who is referred to numerous times in the text history between J.B. and RAMYARD. While police were on scene for the domestic incident, they received a call from a resident in the same neighborhood. The resident discovered a discarded backpack on their property. Police recovered the backpack and determined that it belonged to J.B. Inside the backpack were numerous bank debit cards belonging to other individuals. One of the debit cards belonged to Sanchez.

Records for J.B.'s benzosteadyswipin Instagram account show J.B. logged into the account on April 5, 2022 and on April 8, 2022. The IP addresses associated with the logins were identified and internet service provider records showed the service address as XXXX Coventry Park Way, Windermere, Florida. The internet account subscriber was identified as "Zachary Ramyard."

Airbnb provided records for the registered owner of the residence at the time of the April 5, 2022 incident. Records show the XXXX Coventry Park Way residence was registered to M.D. Open-source investigation showed that M.D. and RAMYARD created an online baby registry for a child due in 2021 and listed the location as Windermere, Florida.

A recent search of law enforcement databases revealed a current address for M.D. as XXX Lake Avenue, Apt. XXXX, Orlando, Florida. On February

Defendant's Initials _3\_      37

1, 2023, the manager of the apartment building located at Lake Avenue, Orlando, Florida recognized images of RAMYARD and M.D. as individuals who had been living in the building. The manager confirmed that M.D.'s name was on the lease for the apartment and that the phone number provided ended in 7716. The manager confirmed that the lease started on February 1, 2022 and expired on January 31, 2023.

Records for the 1588 Phone Number show that the user of that number exchanged approximately 60 phone calls with M.D.'s 7716 phone number between January 18, 2022 and April 18, 2022. Finally, records from the 1588 Phone Number show the phone's location was in close proximity of the Lake Avenue address hundreds of times between the end of January 2022 and the end of April 2022.

### E. Rojas Identified RAMYARD as "Z"

On January 19, 2023, a proffer was conducted with Rojas. Rojas stated that J.B. recruited Rojas and Sanchez to rob the mail carrier and steal a USPS arrow key. According to Rojas, on March 7, 2022, after they robbed the mail carrier, Rojas and Sanchez met J.B. and exchanged the arrow key for $1,000 each. Rojas stated that he learned J.B. gave the arrow key to "Z" the same day as the robbery. Rojas also witnessed a telephone conversation between Sanchez and J.B. where J.B. told Sanchez that he (J.B.) gave the key to "Z." During the

Defendant's Initials _____    38

telephone conversation, J.B. stated that he met "Z" at the Florida Mall where he (J.B.) gave him ("Z") the key.

When shown an image of RAMYARD, Rojas identified RAMYARD as the person he knew to be "Z."

Defendant's Initials _____      39